UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAURA EVANS, et al.,

            Plaintiffs,

    v.                                              Case No. 21-C-60

ASSOCIATED BANC-CORP, et al.,

            Defendants.

## DECISION AND ORDER GRANTING MOTION TO DISMISS

Plaintiffs Laura Evans and Carol Nowak-Galkowski brought this action pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against Defendants Associated Banc-Corp ("Associated Bank"), Associated Banc-Corp Plan Administrative Committee ("the Committee"), Associated Trust Company, N.A., Kellogg Asset Management, LLC, and John and Jane Does 1-20. Plaintiffs assert that Defendants breached their fiduciary duties of prudence and loyalty to the detriment of the Associated Banc-Corp 401(k) and Employee Stock Ownership Plan ("the Plan"), its participants, and its beneficiaries. They also assert that Associated Bank failed to adequately monitor the fiduciaries responsible for administering the Plan. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Before the Court is Defendants' motion to dismiss the amended complaint. For the following reasons, the motion will be granted and the case dismissed.

## LEGAL STANDARD

A complaint must contain "enough facts to state a claim to relief that is plausible on its face," and these facts "must raise a right to relief above the speculative level." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Though the Court recognized in *Twombly* the need for

caution before dismissing a case at the pleading stage before discovery has begun, it noted that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)). This is especially true in ERISA class actions. In putative ERISA class actions, Rule 12(b)(6) motions are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Courts apply a "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats." *Dudenhoeffer*, 573 U.S. at 425. Because the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Northwestern University*, 142 S. Ct. 737, 742 (2022). "Where a complaint pleads facts that are merely consist with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotes omitted). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief. *Id.*

## ALLEGATIONS OF THE COMPLAINT

According to the allegations in the complaint, Associated Bank operates their 401(k) and Employee Stock Ownership Plan as a "defined contribution plan." Am. Compl., ¶ 14, Dkt. No. 19. The Plan "covers eligible employees of Associated Bank and its subsidiaries," and those eligible employees may "contribute a percentage of their earnings on a pre-tax basis to the Plan." *Id.* at ¶ 15. Since 2014, the Plan has had between $453 million and $690 million in assets, between 5,600 and 7,000 participants, and has "consistently ranked in the top half of the 99th percentile of

all defined contribution plans by size." *Id.* at ¶ 16. The complaint alleges that, as of the end of 2014, the investment options under the Plan included (1) seven actively-managed funds organized as collective trusts that were managed by Associated Bank's subsidiary, (2) an Associated Bank money market fund, (3) Associated Bank stock, (4) ten actively-managed funds that were managed by third-parties, and (4) two passively-managed funds offered by Vanguard. *Id.* at ¶ 17. Throughout the period in question, the Plan has held investments that were "affiliated with Associated Bank." *Id.* at ¶ 17.

Plaintiffs allege that Defendants' process for selecting and monitoring the Plan's investment options was "disloyal and imprudent." *Id.* at ¶ 33. They claim that Defendants included "proprietary investments overwhelmingly rejected by fiduciaries of similarly sized plans, when a nonconflicted fiduciary would have selected among the more popular and better performing nonproprietary alternatives available." *Id.* These proprietary funds, according to Plaintiffs, were "unpopular, excessively expensive, and poorly performing." *Id.* Plaintiffs allege that "superior nonproprietary alternatives were available and far more widely utilized by nonconflicted fiduciaries." *Id.*

To illustrate their allegations, Plaintiffs offer several examples. First, Plaintiffs point to the "Associated Balanced and Growth Balanced LifeStage Funds." *Id.* at ¶ 34. Plaintiffs assert that the Plan has included both of these funds since 2014, but that, based on a review of publicly filed Form 5500s for similarly sized plans, no other plan has offered either fund as an option for its participants. *Id.* at ¶¶ 34–35. This is for good reason, Plaintiffs allege, because each fund has underperformed its own benchmark and had significantly higher expense ratios than other funds on the market. *Id.* at ¶ 37–38. A table submitted by Plaintiffs, shown below, demonstrates the Associated Balanced LifeStage Fund's performance and expense ratio as compared to the

performance and expense ratio of two other funds which had "similar asset allocations and levels of risk, lower fees, and greater acceptance among fiduciaries of similar plans." *Id.*

| Fund Name | Ticker | 3-Yr Return (as of 12/31/15) | 5-Year Return (as of 12/31/15) | Current Expense Ratio (as of 8/31/2019) | # of Plans > $500M in Fund |
|---|---|---|---|---|---|
| Associated Balanced LifeStage | | 6.83% | 6.04% | 0.76% | 1 (the Plan) |
| Associated Balanced LifeStage Custom Benchmark | N/A | 7.41% | 7.07% | N/A | N/A |
| Vanguard Wellington Admiral | VWENX | 9.64% | 9.07% | 0.17% | 210 |
| American Funds American Balanced R6 | RLBGX | 10.81% | 10.18% | 0.27% | 75 |

Plaintiffs claim that a "prudent and loyal review of the marketplace in 2015 would have revealed that the Associated Balanced LifeStage Fund was underperforming its benchmark, and that Vanguard and American Funds options were performing significantly better at lower cost than the Associated Balanced LifeStage Fund." *Id.* at ¶ 38. As a result, Plaintiff alleges, "a prudent and loyal fiduciary would have removed the Associated Bank Fund," and that retention of this fund "reflects a fiduciary process imprudently and disloyally tilted in Associated Bank's favor." *Id.*

Plaintiffs offer similar allegations for the Associated Growth Balanced LifeStage Fund. They again assert that other funds in the same class performed significantly better at a lower cost than the Associated Growth Balanced LifeStage Fund. *Id.* at ¶ 39. Another table provided by Plaintiffs is shown below.

4

| Fund Name | Ticker | 3-Yr Return (as of 12/31/15) | 5-Year Return (as of 12/31/15) | Expense Ratio (as of 8/31/2019) | # of Plans > $500M in Fund |
|---|---|---|---|---|---|
| Associated Growth Balanced LifeStage | | 8.3% | 7.02% | 0.82% | 1 (the Plan) |
| Associated Growth Balanced LifeStage Custom Benchmark | N/A | 9.26% | 8.33% | N/A | N/A |
| T. Rowe Price Capital Appreciation | PRWCX | 13.15% | 11.39% | 0.59% | 18 |
| Fidelity Puritan | FPURX | 10.69% | 9.21% | 0.53% | 84 |

*Id.* Again, based on performance figures provided above, Plaintiffs argue that a prudent and loyal review of the marketplace would have revealed that the Associated Growth Balanced LifeStage Fund was "underperforming its benchmark, and that the T. Rowe Price and Fidelity options were performing significantly better at lower cost." *Id.* at ¶ 40.

Plaintiffs also assert that the supposedly disloyal and imprudent process is demonstrated by the fact that Associated Bank removed a non-proprietary fund from the options it offered through the Plan. *Id.* at ¶ 42. They allege that, instead of removing Associated Bank's "poorly performing, excessively expensive" proprietary investments, Defendants instead removed the Vanguard Balanced Index Fund, a fund that exceeded the returns of the Associated Growth Balanced LifeStage Fund by 0.99% and 1.69% over the prior three- and five-year periods, respectively. *Id.* A basic review, Plaintiffs allege, would have revealed that the Plan would have been better served by retaining the Vanguard fund and jettisoning the Associated fund. *Id.* at ¶ 43.

Plaintiffs also point to the Associated Equity Income Fund, an option included in the Plan from 2014 to 2017. *Id.* at ¶ 44. Again, Plaintiffs allege that no similarly sized Plan has offered this fund, aside from the Plan itself. *Id.* at ¶ 45. They assert that the fund has "underperformed its benchmark by 1.06% and 1.52% over the prior 3- and 5- year periods, respectively." *Id.* at ¶ 46.

5

Plaintiffs allege that the performance and expenses associated with the foregoing funds "reflect a fiduciary process tainted by self-interest, resulting in imprudent and disloyal decisions that infected the selection and monitoring of all Associated Bank-affiliated investments in the Plan." *Id.* at ¶ 47. They also assert that the Plan's fiduciaries "improperly retained these funds to serve Associated Bank's own business interests, instead of the participants' interests, and generate additional investment fee income for Associated Bank." *Id.* at ¶ 48. In addition, Plaintiffs allege that Defendants "inaccurately reported the performance" of the foregoing funds with respect to an annual "investment charge" allegedly assessed for each single asset class investment. *Id.* at ¶ 50. This, according to Plaintiffs, has the effect of making Associated Bank's propriety investments "appear more attractive relative to the Plan's nonproprietary offerings." *Id.*

Plaintiffs remaining allegations relate to the administration of collective investment trusts, known as "CITs." The allegations again assert that Defendants retained "poorly performing proprietary CITs as underlying holdings of the Associated Bank CITs in the Plan." *Id.* at ¶ 52. They also allege that the CITs charged excessive fees, attributable to an "Associated investment charge" that went as high as 0.45%. *Id.* at ¶ 53. According to Plaintiffs, similar CIT portfolio management services charged fees as low as 0.10%. *Id.*

Finally, Plaintiffs assert that they did not have knowledge of the material facts of this case until shortly before this suit was filed. *Id.* at ¶ 55. They note that they do not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan because that information is solely within the possession of Defendants. Instead, Plaintiffs note that they have "drawn reasonable inferences regarding these processes based upon . . . the totality of the facts and circumstances" set forth in the amended complaint. *Id.* Based on the foregoing,

Plaintiffs seek plan-wide relief and the certification of this action as a class action, based upon claims of breach of the duties of loyalty and prudence, and failure to monitor fiduciaries.

ANALYSIS

A. **Documents Attached to Defendants' Motion**

As an initial matter, Defendants have attached various documents to their motion to dismiss. *See* Dkt. Nos. 29-1–29-12. These documents consist of Associated Bank's Form 5500s and fund fact sheets obtained from Morningstar, all of which Defendants rely heavily upon in their arguments. There does not appear to be any dispute as to the Form 5500s, and rightly so, because a Form 5500 is "publicly available on the Department of Labor's website," and district courts "can take judicial notice of information on government websites." *Bartnett v. Abbott Laboratories*, 492 F. Supp. 3d 787, 798 n.2 (N.D. Ill. 2020) (citing *Denius v. Dunlap*, 330 F.3d 919, 926–27 (7th Cir. 2003)). The parties do, however, dispute whether the Morningstar fund fact sheets may be considered by the Court.

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, courts "[t]aking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). A court may also take judicial notice of facts that are "(1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Id.* at 773–74 (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)). In sum, when ruling on a motion to dismiss, the Court may consider documents attached to the complaint, documents central to the complaint and referred to in it, and

7

information that is properly subject to judicial notice. *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017).

Plaintiffs argue that Defendants are asking this Court to go far beyond the categories of documents listed above and are instead asking the Court to take judicial notice of fact sheets that are "neither attached to nor referenced in the Amended Complaint." Dkt. No. 30 at 18. They also take issue with the fact sheets on a more fundamental level, challenging the accuracy of the information provided in the fact sheets on the ground that they believe Defendants inaccurately reported information by failing to disclose relevant fees. *Id.* at 14–15, 19.

Plaintiffs point to *Miller v. Astellas US LLC*, No. 20-C-3882, 2021 WL 1387948 (N.D. Ill. Apr. 13, 2021), a case in which the district court excluded similar fund fact sheets at the motion to dismiss stage. In that case, the defendant sought to include reports published by Morningstar on the grounds that the court could take judicial notice of the reports and that they were specifically referenced in and relied upon in the complaint. *Id.* at *3. The court concluded that the argument "conflate[d] the distinct concepts of incorporation by reference and judicial notice," and that the Morningstar reports did not fall into either category. *Id.* Although the complaint in that case mentioned Morningstar classifications and Morningstar generally, the complaint did not refer to any of the reports attached by the defendant, nor were the allegations concerning information from Morningstar "central to [the] plaintiffs' claims." *Id.* Based on these considerations, the court declined to consider the Morningstar reports. *Id.*; *see also Karg v. Transamerica Corporation*, No. 18-CV-134-CJW-KEM, 2019 WL 3938471, *7 n.5 (N.D. Iowa Aug. 20, 2019) ("The Court declines to consider the screenshots of the Morningstar website that defendants attached to their motion to dismiss . . . Plaintiffs inclusion of some Morningstar data in their complaint does not

8

Case 1:21-cv-00060-WCG   Filed 09/30/22   Page 8 of 17   Document 42

mean that the complaint 'necessarily embraced' any and all data on Morningstar's website related to any of the funds at issue.").

Citing *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), Defendants argue that the Seventh Circuit has taken a liberal approach to the doctrine of judicial notice in ERISA cases, and that *Miller* is an outlier when viewed through this liberal lens. Dkt. No. 34 at 12. But the "liberal approach" that *Hecker* described reveals nothing more than the standard already recited by the Court. The cases *Hecker* cited in describing this liberal approach included situations in which consideration of extraneous documents was upheld where (1) an agreement was quoted in a complaint and central to the allegations of the complaint, (2) letters that established the parties' contractual relationship were referred to in the complaint, and (3) a welfare plan was referred to in the complaint in order to decide whether the plan qualified under ERISA. *See Hecker*, 556 F.3d at 582 (collecting cases). True, *Hecker* upheld a district court's consideration of summary plan descriptions and prospectuses, but the *Hecker* court noted that the complaint specifically referenced the summary plan descriptions and that the prospectuses were publicly available documents. *Id.* at 582–83. *Hecker* did not hold that fund fact sheets, such as the ones at issue in this case, may be considered at the motion to dismiss stage where they were not attached or referenced in the complaint. *See Miller*, 2021 WL 1387948, at *4 ("*Hecker* does not support Aon's argument because the Seventh Circuit did not broadly hold that prospectuses can or must always be considered on a motion to dismiss."). Defendants also point to a variety of cases, primarily out of the Northern District of California, where courts have considered fund prospectuses and summary prospectuses at the motion to dismiss stage. *See, e.g.*, *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020); *White v. Chevron Corp.*, No. 16-CV-

9

0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017). Of course, these cases are not binding on the Court.

Defendants further argue that policy reasons support the consideration of the fund fact sheets. They argue that consideration at this stage "avoids prolonging a potential meritless action," which is particularly salient in ERISA cases because the prospect of discovery in a suit claiming breach of fiduciary duty is daunting, given the costly inquiries and document requests that may arise. Dkt. No. 34 at 13. Defendants also note that consideration of these documents is appropriate because it discourages "gamesmanship" in pleadings, whereby plaintiffs may attempt to avoid dismissal under Rule 12(b)(6) by failing to attach documents that prove their claim has no merit. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

It may be that in certain cases consideration of fund fact sheets not attached or referenced in the complaint may be appropriate, especially where there is no dispute as to the accuracy of the documents. But in a situation such as this, where Plaintiffs specifically allege that the information included on the fact sheets is inaccurate, consideration of the fact sheets would be inappropriate. As was the case in *Miller*, although the complaint refers to Morningstar on three occasions, the amended complaint does not refer to the specific fund fact sheets submitted by Defendants. Because the fund fact sheets are not attached to the complaint, central to the complaint and referred to in it, or information that is properly subject to judicial notice, the Court may not consider them at this stage. *Village of Oak Lawn*, 860 F.3d at 493 n.2. The Court is sensitive to Defendants' concerns but given Seventh Circuit precedent and the dispute over the accuracy of the information contained in the fact sheets, consideration of these documents is inappropriate at this stage. If, as Defendants suggest, Plaintiffs' counsel have engaged in "gamesmanship" in order to leverage the potentially massive costs of defending such a suit into a favorable settlement posture, the court can

10

consider such conduct in deciding whether to award attorney's fees. *See* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter * * * by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").

### B. Breach of Fiduciary Duty

A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). A fiduciary must also discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Hughes v. Nw. Univ.*, 595 U.S. ____ (2022) (quoting 29 U.S.C. § 1104(a)(1)(B)). "In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). "In order to assess the prudence of the fiduciary's actions, they must be evaluated in terms of both procedural regularity and substantive reasonableness." *Id.* (citing *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014)).

"Importantly, the prudence standard is processed-based, not outcome based." *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). A Plan's mere underperformance, absent any allegations of imprudence, is not actionable. *See DeBruyne v. Equitable Life Assurance Soc'y of the United States*, 920 F.2d 457, 465 (7th Cir. 1990) ("[T]he ultimate outcome of an investment is not proof of imprudence."); *Loomis v. Exelon Corp.*, 658

11

Case 1:21-cv-00060-WCG   Filed 09/30/22   Page 11 of 17   Document 42

F.3d 667 (7th Cir. 2011). A claim for breach of fiduciary duty must therefore focus on "a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). But because ERISA plaintiffs generally do not have "inside information" regarding the fiduciary's process, courts have recognized that "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen*, 835 F.3d at 678 (citation omitted). The allegations must support more than the mere possibility that a breach of fiduciary duty occurred; to "unlock the doors of discovery," the allegations must make the claim plausible. *Iqbal*, 556 U.S. at 678–79. With these considerations in mind, the Court now turns to Plaintiffs' allegations.

1. **Retention of the Associated Bank Funds**

In the amended complaint, Plaintiffs allege that Defendants "failed to employ a prudent and loyal process for selecting, monitoring, and reviewing the Plan's investment options, by improperly prioritizing Associated Bank's proprietary investments over superior available options, and by failing to critically or objectively evaluate the quality of the Plan's proprietary investments in comparison to other investment options." Am. Compl. ¶ 71. They further allege that Defendants' conduct and decisions were "driven by a desire to drive revenues and profits to Associated Bank and its subsidiaries, and to generally promote Associated Bank's business interests." *Id.* at ¶ 72. Defendants' conduct and decisions, Plaintiffs claim, resulted in the Plan and its participants suffering "millions of dollars in losses." *Id.* at ¶ 74.

The facts alleged in support of these conclusory allegations, however, fail to plausibly support them. First, it should be noted that according to the 2019 Form 5500 filed on behalf of the

12

Plan, of the 34 different funds offered by it, only 8 (less than 25%) are Associated-branded funds. Compare *Velazquez v. Mass. Fin. Servs. Co.*, 320 F. Supp. 3d 252, 258 (D. Mass. 2018) (involving allegation that "MFS funds comprised 'the vast majority' – up to 98 percent – of the investment options in both Plans since at least 2011"). And of the proprietary funds at issue, the Amended Complaint offers specific allegations as to only three.

As to the three funds highlighted in the Amended Complaint, the allegations of underperformance do not create an inference of imprudence because they are based on short-term performance. Short-term performance is an unreliable indicator of overall performance because it can mask year to year performance and is a poor predictor of future performance. *Id.* at 13–15. As the Sixth Circuit recently explained,

> Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty. Precipitously selling a well-constructed portfolio in response to disappointing short-term losses, as it happens, is one of the surest ways to frustrate the long-term growth of a retirement plan. …. Any other rule would mean that every actively managed fund with below-average results over the most recent five-year period would create a plausible ERISA violation. Unless and until it becomes feasible to have all actively managed funds perform above average, that would lead to the disappearance of this option in ERISA plans.

*Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022); *see also Dorman v. Charles Schwab Corporation*, No. 17-cv-285, 2019 WL 580785, at *6 (N.D.Cal. 2019) (noting "three to five years . . . considered relatively short periods of underperformance").

Although some courts have recognized that allegations of consistent, ten-year underperformance may support a duty of prudence claim, the underperformance must be substantial. *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *10 (S.D.N.Y., 2019). Here, Plaintiffs allege that the three funds were trailing their benchmarks over the 10-year period prior to 2015, Am. Compl. ¶¶ 37 n.4, 39 n.7, but they offer no information about the degree

13

Case 1:21-cv-00060-WCG   Filed 09/30/22   Page 13 of 17   Document 42

of any such underperformance during the bulk of the relevant time period and whether it was substantial. Absent such information, their conclusory allegation that the underperformance of two or three of the 34 funds in the Plan was so large as to warrant an inference that Defendants are in breach of their fiduciary obligations lacks plausibility.

The same defect applies to Plaintiffs' reliance on the funds they offer as alternative comparators to the Associated Balanced LifeStage Fund and the Associated Growth Balanced LifeStage Fund. The charts set forth in the Amended Complaint show the performance of the alternative funds at three- and five-year intervals. To repeat, "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision." *Smith*, 37 F.4d at 1166. Although Plaintiffs allege that their comparators "performed significantly better" over the 10-year period ending December 31, 2020, Dkt. No. 19 ¶¶ 37 n.4, 37 n.7, they provide no specificity as to what they mean by "significantly better." Again, absent more context and specificity, their claim that Defendants breached the fiduciary duty by including and/or failing to remove the Associated funds lacks plausibility.

Plaintiffs' reliance on their comparator funds also fails because the facts alleged are insufficient to show that the funds chosen by them are truly comparable. The Amended Complaint claims that both the LifeStage Funds and the comparator funds are comparable because that are taken from the same broad Morningstar category—the "US Fund Allocation – 50% to 70% Equity category." Dkt. No. 28 ¶¶ 37 n.3, 39 N.6. But as Defendants point out, funds that invest as little as 50% in equities (common stocks) and funds that invest as much as 70% in equities—a range of 20%-—would be expected to have very different returns and levels of risk, depending on the performance of the equity markets. Dkt. No. 28 at 14. *See Prusky v. Reliastar Life Ins. Co.*, 532

F.3d 252, 260 n.8 (3d Cir. 2008) (noting that "equity investments entail more risk and thus offer a commensurately greater rate of return than that which one would expect from a lower-risk debt investment"). "[A] complaint cannot simply make a bare allegation that costs are too high, or returns are too low . . . . Rather, it 'must provide a sound basis for comparison—a meaningful benchmark.'" *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020) (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)). "In the absence of more detailed allegations providing a 'sound basis for comparison,'" *Albert v. Oshkosh Corporation*, 47 F.4th 570, 582 (7th Cir. 2022), a motion to dismiss should be granted.

In the absence of allegations plausibly alleging underperformance of a character and degree sufficient to support an inference that Defendants breached their fiduciary duties to the participants, the allegations that Defendants included proprietary funds in the Plan that no other similarly sized plans included adds nothing. As Plaintiffs concede, "offering proprietary options is not a breach of the duty of prudence and loyalty in and of itself." Dkt. No. 19 ¶ 33. And there is no rule that fiduciaries cannot offer funds unless a similarly sized plan offers it first. Having failed to allege facts sufficient to raise a plausible inference that Defendants breached the fiduciary duties by including Associated Funds in the Plan, Plaintiffs' claim fails.

2. **Management of the Associated Bank Funds as CITs**

Next, Plaintiffs allege that Associated Bank's subsidiaries, Associated Trust Company, N.A. ("ATC") and Kellogg Asset Management, LLC ("Kellogg"), "failed in their separate fiduciary duty to prudently and loyally monitor the underlying investments of Associated Bank funds in the Plan, which were organized as CITs." Am. Compl. ¶ 51. They assert that ATC and Kellogg "retained poorly performing CITs as underlying holdings of the Associated Bank CITs in the Plan," such as the Associated Equity Income fund, which although removed as a standalone

15

option from the Plan in 2017, remained as an underlying investment of the Associated Balanced Growth LifeStage Fund. *Id.* at ¶ 52. According to Plaintiffs, Associated Bank CITs constituted up to 45% of the underlying holdings of the Associated Bank asset allocation funds in the Plan. *Id.* Plaintiffs also assert that an "Associated investment charge" of up to 0.45% created excessive fees, and that, given the size of the Plan and what comparable managers charge for similar services, Defendants could have obtained the same CIT portfolio management services for just 0.10%. *Id.* at ¶ 53.

As explained by Defendants, the LifeStage Funds are "funds of funds, meaning that the assets of each LifeStage Fund are invested in other funds, rather than being invested in individual stocks or bonds." Dkt. No. 28 at 25. The underlying holdings of each LifeStage Fund are "chosen and monitored by the Funds' investment managers," alleged to be ATC and Kellogg. *Id.* In essence, Plaintiffs' claim is that ATC and Kellogg were imprudent and disloyal by utilizing Associated Bank's proprietary funds as underlying investments of Associated Bank's LifeStage Funds. Plaintiffs' allegations are insufficient to state a plausible claim on these grounds.

Plaintiffs argue that the LifeStage Funds were "laden with Associated Bank's non-competitive proprietary funds," and that this included the "troubled Associated Equity Income Fund – even after it [was] removed as a standalone investment option from the Plan." Dkt. No. 30 at 25. The allegations offered in support of this claim, however, are threadbare and conclusory. The fact that a single fund may have been removed from the Plan as a standalone option, but retained as an underlying investment in a CIT, does not give rise to the inference that ATC or Kellogg was disloyal or imprudent in the process they employed. Although removed from the Plan as a standalone option, there could have been a myriad of reasons to keep the Equity Income Fund as an underlying investment in the LifeStage Fund, such as for the purpose of diversification.

16

Case 1:21-cv-00060-WCG   Filed 09/30/22   Page 16 of 17   Document 42

Furthermore, Plaintiffs' allegation that Defendants could have obtained similar CIT portfolio management services for a percentage fee of roughly 0.10% is entirely conclusory. Plaintiffs offer no support for the statement, such as identifying the service provider that would charge such a rate for similar services. In sum, Plaintiffs have failed to allege facts that "tell a plausible story" regarding ATC and Kellogg's management of the CITs. *Allen*, 835 F.3d at 678. While the allegations may make it *possible* that ATC and Kellogg failed to manage the CITs in a loyal and cost-conscious manner, that is insufficient to "unlock the doors of discovery" on this claim. *Iqbal*, 556 U.S. at 678–79. As a result, this claim will be dismissed, along with ATC and Kellogg as parties.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 27) is **GRANTED** and the case is dismissed with prejudice.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of September, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge